```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

FORDHAM FINANCIAL SERVICES,   :
INC.,                         :
                              :    NO. 1:06-CV-00513
        Plaintiff,            :
                              :
    v.                        :    **OPINION AND ORDER**
                              :
VENTRAMEX S.A. DE C.V.,       :
                              :
        Defendant.            :

This matter is before the Court on Defendant's Motion to Dismiss (doc. 4), Plaintiff's Response (doc. 5), and Defendant's Reply (doc. 7). Also before the Court are Plaintiff's Motion to Strike Exhibits Attached to Defendant's Motion to Dismiss (doc. 12), and Defendant's Response (doc. 14). For the reasons indicated herein, the Court denies both pending motions.

**I. Background**

Plaintiff Fordham Financial Services, Inc., ("Fordham") an Illinois corporation, alleges it purchased all of the accounts receivable of the Ohio corporation, Moraine Molded Plastics, ("Moraine") on December 4, 2003, pursuant to a factoring agreement (doc. 2). Plaintiff further alleges that on June 22, 2004, Moraine notified one of its customers, Defendant Ventramex S.A. de C.V., ("Ventramex"), a Mexican corporation, that Fordham purchased all of Moraine's accounts receivable, such that Ventramex should pay Fordham, and not Moraine, for all Moraine invoices (*Id.*). Subsequent to such alleged notice, between December 9, 2004, and

May 9, 2005, Ventramex purchased and received from Moraine goods valued at $127,191.52 (Id.). In May 2005, Moraine ceased doing business (Id.). Fordham alleges when it sought payment from Ventramex for the Moraine receivables, Ventramex failed to pay (Id.). Fordham then filed the instant Complaint on June 6, 2006, in the Hamilton County Court of Common Pleas, seeking $127,191.52, interest, and costs (doc. 2). On August 4, 2006, Ventramex removed this matter from the state court, and this Court presently exercises diversity jurisdiction over the contract dispute (doc. 1).

On August 31, 2006, Defendant Ventramex moved to dismiss Plaintiff's Complaint on the grounds that 1) the Court lacks personal jurisdiction over Ventramex, 2) Plaintiff failed to properly serve Defendant, and 3) the Complaint fails to state a claim upon which relief may be granted (doc. 4). Plaintiff filed its Response in Opposition to Defendant's Motion (doc. 5), and Defendant filed its Reply (doc. 7), such that this matter is ripe for the Court's consideration.

**II. Defendant's Motion to Dismiss (doc. 4)**

    **A. Rule 12(b)(2): Lack of Personal Jurisdiction**

Ventramex first argues that it is not subject to either the general or specific jurisdiction of the Court. Plaintiff appears to concede that it has not established general jurisdiction, which would require it to show that Ventramex has

2

continuous and systematic conduct in Ohio. Third Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). Plaintiff argues rather that Ventramex is subject to specific personal jurisdiction, which arises when a party has sufficient minimum contacts with the forum, and the action arises out of those contacts (doc. 5). In Plaintiff's view, Ventramex purposefully availed itself of the privilege of conducting business in Ohio, by entering the state to purchase goods manufactured in Ohio (Id.).

### 1. Applicable Standards

When considering whether personal jurisdiction exists, the Court will consider the facts and evidence in the light most favorable to the plaintiff and cannot consider facts proffered by the defendant that conflict with any offered by the plaintiff. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). Personal jurisdiction is appropriate in a diversity case if such jurisdiction comports with the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment. Accordingly, to determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to limits of the Due Process Clause. Reynolds v. International Amateur Athletic Fed., 23 F.3d 1110, 1115 (1994).

The Ohio long-arm statute allows an Ohio court to exercise personal jurisdiction over nonresidents of Ohio on claims arising from the person's acting directly or by an agent to

3

1)transact any business in Ohio, 2) contract to supply services or goods in Ohio, 3) cause tortious injury by an act or omission in Ohio, or 4) cause tortious injury in Ohio by an act or omission outside Ohio if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Ohio. O.R.C. §2307.382 (2005). Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, the Court's central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." Caphalon v. Rowlette, 228 F.3d 718 (2000)(citing Cole v. Mineti, 133 F.3d 433, 436 (6th Cir. 1998) and Goldstein v. Christiansen, 70 Ohio St.3d 232, 638 N.E. 2d 541, 545 n.1)(Ohio 1994)(per curiam)), International Shoe Co. v. Washington, 326 U.S. 310 (1945). The Court must employ three criteria to make this determination:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;
> 
> (2) the cause of action must arise from the defendant's activities there; and
> 
> (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003).

4

### 2. The Parties' Arguments

Ventramex argues, relying on Brunner v. Hampson, 441 F.3d at 466-67 (6th Cir. 2006), that due to the "arising from" requirement, the Ohio long-arm statute requires not a "but for" relationship but rather a "proximate cause" relationship between a plaintiff's claim and the defendant's conduct in Ohio (doc. 4). Defendant argues that under Brunner, this Court lacks specific jurisdiction because there is no proximate cause between Fordham's claim pursuant to the factoring agreement, and Ventramex's conduct in Ohio (Id.). Ventramex argues it was not a party to the factoring agreement, and the only possible proximate cause for this action is Ventramex's alleged failure to pay Fordham directly (Id.). Ventramex argues its only connection to this forum is that a now defunct company which is not a party to this lawsuit once operated in Ohio and allegedly assigned its receivables to Fordham (Id.).

Plaintiff responds that its claim is based on a secured interest it owns in the payments due to the Ohio company from which Defendant was purchasing goods (doc. 5). Plaintiff proffers copies of all the Moraine invoices for which it seeks payment from Ventramex, all of which include notice that "This payment has been sold to Fordham Financial Services, Inc., P.O. Box 1220, Highland Park, IL 60035, Payments to any other party will not release your liability" (Id.). Plaintiff argues its cause of action is directly

5

related to purchase contracts Ventramex entered into in the state of Ohio (Id.).

Ventramex replies, arguing that Plaintiff failed to attach an affidavit or other evidence showing that Ventramex purposefully availed itself to the jurisdiction of the state of Ohio as a result of its continuous and systematic conduct (doc. 7). Ventramex contends, therefore, the Court can only consider the Complaint, the attached exhibits to the Complaint, and Defendant's Affidavits attached to its Motion (Id.).  Ventramex argues it never entered Ohio, and there is no evidence that the goods identified in invoices were made in Ohio (Id.).  Ventramex argues the goods were delivered in Mexico, and reiterates its argument that Plaintiff failed to establish the requisite proximate cause to establish specific jurisdiction (Id.).

### 3. Analysis

Having reviewed this matter, the Court rejects Ventramex's argument that Plaintiff has failed to establish that Ventramex purposefully availed itself to the jurisdiction of the state of Ohio, and to establish proximate cause between Ventramex's actions and Fordham's claim.  Fordham perfected its security interest in Moraine's accounts receivables in December 2003, by filing a UCC-1 statement with the Ohio Secretary of State, under Ohio Rev. Code §§ 1309.501 and 1309.516(A) (doc. 5).  Plaintiff's Response includes a copy of the June 22, 2004 notice, along with a

registered postal receipt, showing Moraine further directly notified Ventramex that Ventramex should pay Fordham for its invoices (Id.). Plaintiff also attached copies of every invoice sent to Ventramex, each of which similarly noticed Ventramex of Fordham's right to payment (Id.).

All of the transactions at issue in this case took place after Fordham filed its UCC-1 statement and notified Ventramex by letter of its right to payment for Moraine invoices. Clearly, Ventramex was on notice when it entered Ohio, entry evidenced by the blanket purchase orders it faxed to Moraine, that it was doing business with an Ohio company, and that it would owe Plaintiff. The purchase orders involved hundreds of thousands of parts, which Moraine ultimately shipped to Ventramex over a five-month period. Moraine sent Ventramex dozens of invoices indicating payment should be made to Fordham.

Under these circumstances, the Court does not find well-taken Ventramex's argument that Plaintiff fails to establish proximate cause between Ventramex's transactions in Ohio and its claim for payment. Under Ohio law, "a corporate nonresident, for the purposes of personal jurisdiction, is "transacting any business," within the plain and common meaning of the phrase, where a nonresident corporation initiates, negotiates a contract, and through the course of dealing becomes obligated to make payments to an Ohio corporation." Hammill Manufacturing Company v. Quality

7

Rubber Products, Inc., 612 N.E. 2d 472, 475 (Court of Appeals of Ohio, 1992). Furthermore, it is not necessary for a nonresident corporation to be physically present in the state in order to "transact business." Id., see Kentucky Oaks Mall Company v. Mitchell's Formal Wear, Inc., 53 Ohio St.3d 73, 76 (Ohio, 1990). Here, the record shows that Ventramex initiated purchase orders in Ohio and became obligated to make payments to an Ohio corporation, squarely within the holding of Hammill Manufacturing Company, 612 N.E. 2d at 475. Ventramex's duty of performance was properly and formally assigned to Plaintiff prior to the transactions, and therefore Plaintiff stood in the shoes of Moraine. Consequently, Plaintiff's action arises from Defendant's activities in Ohio. Clearly it would not comport with the interests of justice to allow a foreign company to set up this sort of a continuing business arrangement with an Ohio company, and not be found to have purposefully availed itself of this jurisdiction. Moreover, it is not unreasonable to conclude that Ventramex's actions give rise to personal jurisdiction. Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003). The Court therefore concludes that the exercise of personal jurisdiction over Ventramex comports with both the Ohio long-arm statute, and the requirements of due process.

### B. Rule 12(b)(5): Insufficiency of Process

Federal Rule of Civil Procedure 12(b)(5) allows for a Complaint to be dismissed based on insufficiency of process.

8

Nafziger v. McDermott Internat'l, Inc., 467 F.3d 514, 521 (6th Cir. 2006). Ventramex argues this case must be dismissed because in its view, it was not properly served with a summons and a Complaint (doc. 4). According to Ventramex, Plaintiff mailed a copy of the summons and the Complaint by regular mail, to Flex-N-Gate corporation, in Urbana, Illinois, on July 10, 2006 (Id.). Ventramex proffers an affidavit of Timothy Francis Graham, who indicates he is a Director of Ventramex and is also employed as general counsel to Flex-N-Gate (Id.). Graham avers that although Flex-N-Gate received a Complaint and Summons by regular mail, this does not constitute service to Ventramex (Id.). In its Motion, Ventramex argues that Ohio Civ. R. 4.5 requires that service on a foreign corporation can be achieved through 1) a manner allowed by the courts of that foreign country, 2) as directed by the foreign authority in response to a letter rogatory, 3) upon a corporation by delivery to an officer, a managing or general agent, 4) by any form of mail requiring a signed receipt, when the clerk of court addresses and dispatches this mail to the party to be served, or 5) as directed by order of the court (Id.). Ventramex argues the regular mail delivery of the Complaint neither comported with Ohio Civ. R. 4.5, Fed. R. Civ. P. 4(f) and (h), Mexican law, or the Hague Convention (Id.). Accordingly, Ventramex argues the Court should dismiss the Complaint for insufficiency of process (Id.).

Plaintiff responds that under Fed. R. Civ. P. 4(m), the

9

120-day time limit to serve a party does not apply to service in a foreign country (doc. 5).  Similarly, under Ohio Civ. R. 4(E), and Civ. R. 4.5, there are no statutorily set time periods within which service must be effected (Id.).  Accordingly, Plaintiff argues it still has time to serve the Complaint, and Defendant's motion to dismiss on this basis should be rejected (Id.).

Defendant responds that Plaintiff has made no effort to properly serve it, and there is no indication that Plaintiff is even trying (Id.).

Having reviewed this matter, the Court agrees that Defendant has not technically and formally been served, but finds that it clearly has received actual notice of Plaintiff's lawsuit, when Plaintiff mailed the Complaint and Summons by regular mail to Flex-N-Gate.  Timothy Graham serves as a Director of Ventramex and is also an employee of Flex-N-Gate.  Moreover, the blanket purchase orders issued to Moraine by Ventramex are labeled with Flex-N-Gate's logo, and expressly incorporate terms, which are posted at Flex-N-Gate's website address.  Although Ventramex states it is not a subsidiary of nor is owned by Flex-N-Gate, it clearly shares a close affiliation.

Actual knowledge of a Complaint, under Sixth Circuit precedent, does not substitute for proper service of process under Rule 4(c)(2)(C)(ii).  Friedman v. Estate of Jackie Presser, 929 F.2d 1151 (6th Cir. 1991).  However, Defendant has not been

prejudiced by lack of formal service, and Plaintiff is correct that under the rules, it still has time to effect service upon Defendant, a foreign entity. Because Defendant removed this matter to federal court, Plaintiff may now effectuate service by any of the prescribed means established in the federal rules. Plaintiff should first seek waiver of service from Defendant in accordance with Rule 4(d), by mailing its request to Defendant's address in Queretero, Mexico, along with a copy of the Complaint. Should Defendant refuse to waive service, the Court may impose upon Defendant Plaintiff's costs of effecting service under the Hague Service Convention.

**C. Rule 12(b)(6): Failure to State a Claim**

Ventramex next argues the Court should dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. Ventramex's arguments to this effect are based on forum selection and choice of law clauses included on the purchase orders it sent to Moraine. Plaintiff argues in response that it was never party to the terms in the purchase orders, and this matter is about its factoring agreement, about which Ventramex was notified, and under which Ventramex owes the amounts invoiced.

Ohio and federal law treat forum selection clauses similarly. General Electric Co. v. Siempelkamp, 29 F.3d 1095, 1098 n. 3 (6th Cir. 1994). Parties may expressly consent to personal jurisdiction, and often do so with forum selection clauses in their

11

contracts. Such forum selection clauses generally control absent a strong showing that they should be set aside. Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). A court can set aside a forum selection clause where enforcement would be unreasonable and unjust, or where the clause is the product of fraud or overreaching. Id. at 15. In determining the validity of a forum selection clause, the Court considers the following factors: 1) the commercial nature of the contract, 2) the absence of fraud or overreaching, and 3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust. Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006), citing Info. Leasing Co. v. Jaskot, 151 Ohio App. 3d 546, 784 N.E. 2d 1192, 1195-96 (Court of Appeals of Ohio, 2003). The Court finds an analysis of these factors appropriate here.

### 1. The Commercial Nature of the Contract

The commercial nature of a contract is generally a vital factor weighing in favor of enforcement of a forum selection clause, as commercial entities are presumed to possess sophistication and experience in contractual and business matters. Info. Leasing Co. v. Jaskot, 784 N.E. 2d at 1195. However, in this case, Plaintiff asserts its rights pursuant to an assignment, and it had no part in negotiating the forum selection clause. The parties do not dispute that Moraine's assignment of its receivables to Fordham falls within the scope of Article 9 of the Uniform

Commercial Code, which Ohio has adopted. Under Article 9-404, "the rights of an assignee are subject to. . .all terms of the agreement between the account debtor and assignor. . ." Ohio Rev. Code § 1309.404.

Ventramex argues, relying on Systran Financial Services Corp v. Giant Cement Holding, 252 F.Supp. 2d 500 (N.D. Ohio 2003), that Plaintiff should be required to accept the forum selection clause that was assigned to it (doc. 7). The Systran court found an assignee bound by an arbitration clause entered into by the original parties. 252 F.Supp. 2d 500. The Court concluded that it made no difference that the original parties to the arbitration provision entered into their agreement after the assignment, because "if [the assignee] did not want to arbitrate disputes over collections from account debtors, it could have contracted with [the assignor] to prevent it from entering into any agreement that contained any arbitration clauses."

The Court agrees that Defendant's Article 9 analysis may indeed weigh in favor of finding the forum selection term valid. However, the Systran case is not exactly on point, as it involved a dispute over whether an arbitration clause bound an assignee. The Systran court properly noted that the clause constituted a contractual remedy, which remains unaltered by assignment. 252 F. Supp. 2d at 505. The Court further noted that agreements to arbitrate are favored by Congress as national policy, as evidenced

13

by its enactment of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Id. at 502. These same considerations do not apply to the case at bar. Moreover, the other authorities cited by Defendant, Citizens Fed. Bank v. Brickler, 114 Ohio App. 3d 401, 410, 683 N.E. 2d 358 (1996), and Nat'l City Bank NW v. Columbian Mutual Life Ins. Co., 282 F.3d 407, 409 (6th Cir. 2002), involve defenses and claims of the account debtor, rather than the assignment of a contractual term selecting a distant foreign jurisdiction.

The Court concludes that the commercial nature of this agreement brings it within the scope of Article 9, and as a result, without consideration of any other factors, this militates toward a finding that the forum selection clause was assigned to Fordham. The Court's conclusion is muted by the fact that it finds no authorities on point that address the question of the assignment of a potentially onerous forum selection clause.

**2. Whether the Clause is the Product of Fraud or Overreaching**

"A valid forum selection clause must not be the product of fraud or overreaching." Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 722 (6th Cir. 2006)(citing Info. Leasing Co., 784 N.E.2d at 1196). Where there is evidence of fraud, misrepresentation, or overreaching on the part of a party to induce another to the inclusion of a forum selection, such a finding militates toward its unenforceability. Id.

Here, there is no evidence before the Court that

14

Ventramex fraudulently induced Moraine to accept the courts of Queretero, Mexico, as the forum for any dispute arising from their transactions. In the first blanket Order, number 2154, the forum selection clause is in the Spanish language, while the second blanket order has no forum selection clause on its face, but incorporates "standard terms" that, according to an affidavit submitted by Ventramex, also vested jurisdiction in the courts of Queretero, Mexico (doc. 4). Moraine could have translated the document, and presumably could have requested from Ventramex its "standard terms."

That said, Ventramex submitted its purchase orders well after it had been notified that all of Moraine's receivables had been transferred to Fordham. Ventramex's obligations under its contract therefore extended beyond Moraine to Fordham, and Ventramex had notice of that. Under such a circumstance, the imposition of a foreign forum selection clause upon Fordham, who had no part in negotiating the forum, but who would be stuck with it, could be viewed as the product of overreaching on the part of Ventramex. <u>Preferred Capital, Inc. v. Sarasota Kennel Club</u>, No. 1:04-CV-2063, 2005 U.S. Dist. LEXIS 15238, *8-9 (N.D. Ohio, July 27, 2005)(Court invalidated assigned forum selection clause where defendant deprived of any opportunity to object to such clause).

### 3. Whether the Clause is Unreasonable or Unjust

An otherwise valid forum selection clause cannot be

15

upheld if it is unreasonable or unjust. Preferred Capital, Inc., 453 F.3d 718, 722-23(citing Info. Leasing Co., 784 N.E.2d at 1196). A finding of unreasonableness or injustice must be based on more than mere inconvenience, but the chosen forum must be so inconvenient as to, in effect, afford no remedy at all, thus "depriving litigants of their day in court." Bremen, 407 U.S. at 19. In determining whether the selected forum is sufficiently unreasonable, the Court considers the following factors, 1) which law controls the contractual dispute, 2) what residency do the parties maintain, 3) where the contract was executed, 4) where are the witnesses and parties to the litigation located, and 5) whether the forum's designated location is inconvenient to the parties. Barrett v. Picker International, Inc., 68 Ohio App. 3d 820, 589 N.E.2d 1372, 1374-75 (Court of Appeals of Ohio, 1990).

As to the question of which law controls, Ventramex argues that Mexican law controls, due to the choice of law provision included in their purchase orders. Ventramex even argues that the notice Moraine gave it of the assignment was invalid, because it did not provide notice in the presence of two witnesses as required by Mexican law.

For the same reasons the Court found Ventramex's invocation of its choice of forum to potentially be the product of overreaching, the Court does not find well-taken its argument that Mexican law controls. The Court further rejects Ventramex's

16

argument that it received defective notice of the assignment, as the notice adequately complied with Ohio Rev. Code § 1309.404(A)(2). Moraine and Fordham entered into the factoring agreement in the United States, not Mexico. Fordham filed notice of its security interest with the Ohio Secretary of State. Ventramex subsequently entered into Ohio and contracted with Moraine. It would not be reasonable to permit Ventramex to superimpose its chosen law onto Fordham under these circumstances.

The second and third Barrett factors do not clearly weigh in the favor of either enforcing or rejecting the forum selection clause, but the fourth and fifth factors weigh in favor of rejecting it. To the extent that any witnesses from Moraine will be called, Ohio is the appropriate forum. Finally, Mexico is simply not a convenient forum for Fordham: it is far from Illinois, and vindication of its contract rights there would involve both linguistic and legal hurdles that it would not face in the United States. Mere distance is not enough to establish inconvenience, Preferred Capital, Inc., 2005 U.S. Dist. LEXIS at *11, but where a party is uninformed of the choice of distant forum, as here, the resulting inconvenience can invalidate the forum selection clause. The Court concludes, without deciding, that a balancing of the factors tips in favor of invalidating the forum selection clause in this case as unreasonable.

Having determined that the forum selection clause is

potentially unreasonable and that it could be the product of overreaching, the Court finds it inappropriate to enforce it. The Court acknowledges that Defendant may ultimately be correct under Article 9 that such term was assigned to Fordham, and that Fordham could have contracted with Moraine to prevent Moraine from entering into such an agreement. However, considering the facts and the evidence in a light most favorable to the Plaintiff, as the Court is required to do in the context of a Motion to Dismiss, Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974), the considerations of overreaching and unreasonableness invalidate the clause such that the Court is precluded from enforcing it.

**III. Plaintiff's Motion to Strike (doc. 12)**

Plaintiff moves to strike Defendant's exhibits and all references thereto from Defendant's motion (doc. 12). Plaintiff argues that Defendant brings its motion pursuant to Fed. R. Civ. P 12(b)(6), and as such, is limited to attacking its Complaint on its face, for failure to state a claim (Id.). Plaintiff argues Defendant only addresses procedural questions in its Motion, and improperly makes several references to purchase orders, affidavits, and foreign laws (Id.).

Defendant responds that while courts primarily consider the allegations in the Complaint on a Rule 12(b)(6) motion, courts may also consider documents referred to in the Complaint that are central to Plaintiff's claims (doc. 14, citing City of Monroe

18

Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 659 (6th Cir. 2005)).  Defendant argues that it attached the purchase orders that correlate to the invoices upon which Plaintiff seeks payment, and such purchase orders are therefore central to Plaintiff's claim (Id.).  As Defendant is a Mexican company, it argues, it was necessary to provide an affidavit and translation of the terms and conditions related to the purchase orders (Id.). Finally, Defendant argues that the Court may consider the exhibits under Rules 12(b)(2) and 12(b)(5), the other two bases for its Motion (Id.).

Having reviewed this matter, the Court finds Defendant's position well-taken.  The proffered exhibits are central to Plaintiff's claims, and assisted the Court in its consideration of the Defendant's Rule 12(b)(2) and 12(b)(5) challenges. Accordingly, the Court does not find well-taken Plaintiff's Motion to Strike.

**IV. Conclusion**

Having reviewed this matter, the Court rejects Defendant's Motion to Dismiss in all respects.  Defendant's challenge to the personal jurisdiction of this Court fails as it transacted business in Ohio within the meaning of the Ohio long-arm statute, Hammill Manufacturing Company, 612 N.E. 2d at 475, and its continuing business arrangement with Moraine shows that the exercise of such jurisdiction comports with the requirements of due

19

process. <u>Caphalon v. Rowlette</u>, 228 F.3d 718. Defendant's second challenge, for the insufficiency of process, also fails, as Plaintiff still has time to effect service upon Defendant, a foreign entity. Fed. R. Civ. P. 4(m). The Court directs Plaintiff to seek waiver of service forthwith. Defendant's final challenge, based on the theories that its choice of forum and law provisions in its blanket purchase orders require this matter to be adjudicated in Queretero, Mexico also fails, as the Court finds that Defendant, which had been notified of the assignment of Moraine's receivables to Plaintiff, may have been overreaching in imposing such a clause. Moreover, the Court finds such a clause potentially unreasonable, such that the Court is precluded from enforcing it. Finally, the Court rejects Plaintiff's Motion to Strike, as it concludes that the exhibits Defendant attached to its Motion are central to Plaintiff's claims.

Accordingly, the Court DENIES Defendant's Motion to Dismiss (doc. 4), and DENIES Plaintiff's Motion to Strike Exhibits Attached to Defendant's Motion to Dismiss (doc. 12).

SO ORDERED.

Dated: May 31, 2007       s/S. Arthur Spiegel
                          S. Arthur Spiegel
                          United States Senior District Judge

20